IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA FOR
THE USE AND BENEFIT OF
MCKENNEY'S, INC.,

    Plaintiff,

v.

GOVERNMENT TECHNICAL
SERVICES, LLC, and THE GRAY
INSURANCE COMPANY,

    Defendants.

CIVIL ACTION FILE

NO. 1:07-CV-1722-BBM

**O R D E R**

This matter is before the court on Plaintiff United States of America for the Use and Benefit of McKenney's, Inc.'s ("McKenney's") Motion for Summary Judgment Against The Gray Insurance Company [Doc. No. 35] and Motion for Clerk's Entry of Default [Doc. No. 37].

## I.    Factual and Procedural Background

Defendant Government Technical Services, LLC ("GTS") is a general contractor[1] that was awarded a government contract to furnish labor and materials in the construction of an alarm system for the Centers for Disease Control ("CDC")

---

[1] The court will use the terms "general contractor" and "prime contractor" interchangeably, to indicate a business that is awarded a contract within the meaning of the Miller Act, 40 U.S.C. § 3131 et seq.

in Atlanta. McKenney's, a Georgia-based subcontractor, entered into a contract with GTS to perform specific work on the building automation systems.

The Miller Act requires any general contractor awarded a government contract for more than $100,000 to secure two bonds, a performance bond to protect the government, and a payment bond "for the protection of all persons supplying labor and material in carrying out the work provided for in the contract." 40 U.S.C. § 3131(b). The purpose of the Act is to ensure payment to subcontractors that the prime contractor fails to pay. A subcontractor working on a project for which a payment bond is issued may bring suit if it has not been paid in full within ninety days of completing its work, and may collect judgment on the bond for the amount due. Id. § 3133(b). Defendant The Gray Insurance Company ("Gray Insurance") issued the payment bond for the project.

McKenney's completed the work under the contract. It billed GTS in the amount of $66,950.00, which GTS has yet to pay. On July 16, 2007, McKenney's notified GTS and Gray Insurance that the payment was overdue and demanded payment pursuant to the bond. McKenney's subsequently brought suit against both GTS and Gray Insurance under the Miller Act, and has now moved for summary judgment on Gray Insurance's liability on the payment bond.

GTS submitted a pro se Answer to McKenney's Complaint. This court granted McKenney's Motion to Strike GTS's Answer on the ground that a corporation may not represent itself in this Circuit, but must be represented by counsel. Palazzo v. Gulf Oil Corp., 764 F.2d 1381, 1385-86 (11th Cir. 1985). GTS was instructed to have a lawyer enter an appearance on its behalf and file an Answer. The docket currently reflects that GTS has done neither. McKenney's has moved for a default judgment against GTS.

## II.  Standard of Review

Summary judgment is proper if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, the non-movant must do more than "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient . . . ." Anderson, 477 U.S. at 252. The non-movant may not avoid summary judgment with evidence that is "merely colorable or is not significantly probative." Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192,

1196 (11th Cir. 1997). Indeed, the non-movant must go beyond the pleadings and set forth specific facts to show that a genuine issue for trial does exist. Anderson, 477 U.S. at 257.

### III. Analysis

As a preliminary matter, the court notes Gray Insurance's argument that summary judgment is premature at this stage. Gray Insurance states that discovery has not yet concluded, and that a parallel action in another jurisdiction has somehow prevented it from fully evaluating the defenses that may be available to it. Motions for summary judgment are appropriate at any time after twenty days have passed since the action was commenced. Fed. R. Civ. P. 56(a). Furthermore, according to the agreed-upon schedule, discovery concluded on January 14, 2008. No extensions have been either requested or granted and, as the existing discovery period has expired, none may be made at this time. LR 26.2B, N.D. Ga. Gray Insurance has given this court no viable justification for delaying consideration of the instant Motion for Summary Judgment on the merits.

### A. McKenney's Miller Act Claim

Gray Insurance admits that McKenney's entered into a contract with GTS, that Gray Insurance issued a payment bond pursuant to the Miller Act, and that McKenney's complied with the applicable notice requirements and statute of

limitations under the bond and the Act. (Gray Insurance's Resp. to McKenney's Statement of Material Facts ¶¶ 1-2, 5-7.) McKenney's has submitted an affidavit from the GTS Project Manager on the CDC construction project, who stated that McKenney's completed its scope of work under the project. (Aff. of Roderick Montgomery ¶¶ 2-3.) McKenney's billed GTS in the amount of $66,950.00 on December 18, 2006. (Compl. Ex. C, at 7.) This suit was filed on July 24, 2007, and McKenney's has yet to be paid in full.

McKenney's has therefore satisfied the elements for a suit on the payment bond under the Miller Act. Gray Insurance has not submitted any evidence to contradict these facts, or to suggest that it is not liable on the bond. The court finds that there is no disputed issue of fact as to Gray Insurance's liability in the amount of GTS's outstanding debt of $66,950.00.

However, though the facts are not in dispute, Gray Insurance makes a legal argument against its liability based on a provision in the contract between McKenney's and GTS. The pay-when-paid clause is a provision in the subcontract that specifies that McKenney's will be paid by GTS only when GTS is paid by the government. Gray Insurance argues that this clause precludes its liability to McKenney's under the payment bond as a matter of law.

Gray Insurance relies on the general rule that "a surety or guarantor may assert all defenses to a contract which would be available to his principal, with the exception of personal defenses." Hardaway Co. v. Amwest Sur. Ins. Co., 15 F.3d 172, 174 (11th Cir. 1994). In this case, Gray Insurance asserts the defense of the pay-when-paid clause of the subcontract, which purports to condition GTS's liability to McKenney's on GTS's receipt of payment from the government. Under Georgia law, a condition precedent to payment, such as a clause that says the subcontractor only receives its money when the prime contractor is itself paid, is not simply a timing mechanism. Rather, it will bar recovery by the subcontractor until the condition is met. See Powell Co. v. McGarey Group, LLC, 508 F. Supp. 2d 1202, 1212 (N.D. Ga. 2007) (Carnes, J.); St. Paul Fire & Marine Ins. Co. v. Ga. Interstate Elec. Co., 187 Ga. App. 579, 579, 370 S.E.2d 829, 830-31 (1988). Gray Insurance therefore asserts that it is not liable to McKenney's until the condition precedent in the contract with GTS is met and GTS has been paid by the government.

The Miller Act provides a federal cause of action, and the rights and remedies available under it are matters of federal, not state, law. F.D. Rich Co. v. U.S. ex rel. Indus. Lumber Co., 417 U.S. 116, 127 (1974). The Miller Act is also "highly remedial in nature." U.S. for Benefit and on Behalf of Sherman v. Carter, 353 U.S. 210, 216 (1957). As such, it is "entitled to a liberal construction and application in order

properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects." Id. "Where subcontract terms [affect] the timing of recovery or the right of recovery under the Miller Act, enforcement of such terms to preclude Miller Act liability contradict the express terms of the Miller Act." U.S. for Use and Benefit of Walton Tech., Inc. v. Weststar Eng'g, Inc., 290 F.3d 1199, 1207 (9th Cir. 2002); see also U.S. for Use and Benefit of T.M.S. Mech. Contractors, Inc. v. Millers Mut. Fire Ins. Co. of Tex., 942 F.2d 946, 949 n.6 (5th Cir. 1991).

In Walton Technology, the Ninth Circuit confronted a nearly identical question concerning the effect of a pay-when-paid clause on a subcontractor's Miller Act claim. The prime contractor rented machinery from a subcontractor and became delinquent on its payments. The agreement between the parties stated that payment to the subcontractor "shall only be made when and if" the government paid the prime contractor. Walton Tech., 290 F.3d at 1203. In the suit by the subcontractor against the surety, the district court found that the prime contractor had not been paid by the government, and so the contract provision stating that the prime contractor was obligated to pay "when and if paid" had not been satisfied. Accordingly, there were no "sums justly due" to the subcontractor under the Miller Act. Id. at 1202.

The Ninth Circuit reversed, holding that the Miller Act, by its terms, governs the timing of the remedy available to the subcontractor. The Miller Act provides that the subcontractor may sue for payment ninety days after it has finished its work. Therefore, a "subcontractor's right of recovery on a Miller Act payment bond accrues ninety days after the subcontractor has completed its work, not 'when and if' the prime contractor is paid by the government." Id. at 1208; T.M.S. Mech., 942 F.2d at 949 n.6 ("The [Miller Act] conditions payment of the subcontractor not on payment by the government to the contractor, but rather on the passage of time from completion of the work or provision of materials."). The pay-when-paid provision of the contract did not bar the subcontractor's recovery against the surety, even though the prime contractor had not yet been paid.

Gray Insurance cites United States for Use and Benefit of Fireman's Fund Insurance Co. v. Frank Briscoe Co., 462 F. Supp. 114, 117 (E.D. La. 1978), for the proposition that the "surety's liability to the subcontractor is grounded upon the general contractor's obligations under that agreement." Id. at 117. However, that same court noted that there "may be an independent legal basis that prevents the surety of a general contractor from being bound by or able to take advantage of a provision in the agreement between its principal and a subcontractor." Id. In the example the Fireman's Fund court gave, an arbitration clause included in the

-8-

contract between the prime contractor and the subcontractor did not apply to the prime contractor's surety because the surety could not legally participate in the arbitration. Id.; see U.S. for and on Behalf of Portland Constr. Co. v. Weiss Pollution Control Corp., 532 F.2d 1009, 1012 (5th Cir. 1976).

This case presents the following dilemma: if the government were to delay paying GTS for over a year, then the one-year Miller Act statute of limitations would have run, thus denying McKenney's any remedy under the Act. Interpreting the interaction between pay-when-paid clauses and the Miller Act in this way does not fit with the "highly remedial" nature of the statute. See Walton Tech., 290 F.3d at 1208; U.S. ex rel. Straightline Corp. v. Am. Cas. Co. of Reading, Pa., No. 5:06-00011, 2007 WL 2050323, at *4 (N.D. W. Va. July 12, 2007). A surety's liability is governed by the obligations of the prime contractor under the contract, however not to the extent that a surety may avoid its obligations imposed by the Miller Act. A contract provision that would deny the subcontractor its federal remedy under the Act cannot be used as a defense by a surety. Cf. Walton Tech., 290 F.3d at 1209; Morganti Nat'l, Inc. v. Petri Mech. Co., No. Civ.A.3:98CV309 (SRU), 2004 WL 1091743, at *11 (D. Conn. May 13, 2004).

To hold otherwise would turn a pay-when-paid contract provision into an implicit waiver of the subcontractor's Miller Act rights. Walton Tech., 290 F.3d at

1208. Under the Act, a subcontractor's waiver of his right to sue on a payment bond is void unless it is in writing, signed, and executed after the subcontractor has already furnished the labor or material under the contract. 40 U.S.C. § 3133(c). McKenney's did not waive its right to bring a cause of action under the Miller Act. Therefore, the court finds that McKenney's is entitled to summary judgment on its suit on the payment bond, as there are no disputed issues of fact.

## C. Gray Insurance's Liability for Interest

McKenney's has requested prejudgment interest in the amount of $12,051.00. (Aff. of Leroy Walden ¶ 5.) The Miller Act is treated as incorporating state law on the issue of whether to award prejudgment interest. U.S. for Use and Benefit of Seminole Sheet Metal Co. v. SCI, Inc., 828 F.2d 671, 677-78 (11th Cir. 1987). Under Georgia law, prejudgment interest is allowed on liquidated claims. U.S. ex rel. Ga. Elec. Supply. Co. v. U.S. Fid. & Guar. Co., 656 F.2d 993, 997-98 (11th Cir. 1981). The principal amount owed to McKenney's is not disputed by either party. Thus, prejudgment interest is appropriate. Gray Insurance has not questioned McKenney's calculation of the amount, and the court adopts it. Prejudgment interest is awarded in the amount of $12,051.00, calculated using the Georgia commercial rate of 1.5% monthly on the outstanding principle. See O.C.G.A. § 7-4-16.

### D. GTS's Default

GTS was instructed to file a notice of counsel and an Answer on or before December 17, 2007. GTS has failed to do so, and to otherwise defend in this action. See Fed. R. Civ. P. 55(a). Therefore, default will be entered against Defendant GTS.

### IV. Conclusion

Accordingly, Plaintiff McKenney's Motion for Summary Judgment [Doc. No. 35] is GRANTED. Defendant Gray Insurance is ORDERED to pay the amount of $79,001.00 to McKenney's. Plaintiff McKenney's Motion for Clerk's Entry of Default [Doc. No. 37] is GRANTED. The Clerk is ORDERED to enter a judgment of default against Defendant GTS.

IT IS SO ORDERED, this 29th day of January, 2008.

s/Beverly B. Martin
BEVERLY B. MARTIN
UNITED STATES DISTRICT JUDGE